# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>      v.<br><br>BANI AUTO GROUP, INC.; SIA BANI & COMPANY, LLC; BANI INVESTMENTS, LLC; CLUB SPORTIVA, INC. f/k/a DRIVE A DREAM, INC.; and SIAVOSH BANIHASHEMI a/k/a SIA BANI,<br><br>                Defendants. | Case No. 18-cv-01649-BL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS BANI AUTO GROUP, INC., CLUB SPORTIVA, INC., AND SIAVOSH BANIHASHEMI**<br><br>[Re:  ECF 67] |

This action arises out of an insurance coverage dispute between Plaintiff United Specialty Insurance Company ("United") and Defendants Bani Auto Group, Inc., Club Sportiva, Inc., and Siavosh Banihashemi (collectively "the Bani Defendants").  In its complaint, United alleges seven claims against the Bani Defendants and two related entities, Sia Bani & Company, LLC and Bani Investments LLC, seeking the following relief:  a declaration that United's policy did not give rise to a duty to defend or indemnify the Bani Defendants when they were sued in a state court action titled *Wright, et al. v. Club Sportive, Inc., et al.*, ("the *Wright* action"); recoupment of monies United paid to defend and indemnify the Bani Defendants in the *Wright* action; and rescission of the policy.

United has filed a motion for partial summary judgment on three of the seven claims in its complaint:  Claim 4, seeking a declaration that there was no coverage of the claims asserted in the *Wright* action and therefore United owes no duty to indemnify the Bani Defendants in that action; Claim 5, seeking a declaration that Club Sportiva, Inc., formerly known as Drive A Dream, Inc., does not qualify as an insured under the policy and therefore United owes no duty to indemnify

United States District Court
Northern District of California

1    Club Sportiva or Drive A Dream, Inc.; and Claim 7, seeking recoupment of the $1,000,000 policy

2    limit United paid to settle the *Wright* action.  The Court has considered the parties' briefing and

3    the oral arguments presented at the hearing on August 26, 2021.

4        For the reasons discussed below, United's motion is GRANTED as to Claims 4 and 7, and

5    DENIED as to Claim 5.

6    **I.    BACKGROUND**

7        *The Policy*

8        On June 17, 2016, Bani Auto Group, Inc. and Sia Bani & Company, LLC ("the

9    applicants") signed a "Garage and Auto Dealer Application" seeking a Auto Dealer policy from

10   United.  Application, Pl.'s Compendium of Exhibits ("COE") 1, ECF 67-1.  In the space for

11   "Description of Operations," the applicants wrote "Used Auto Sales – Car Storage."  *Id*.  The

12   applicants indicated that, with respect to "Dealer Operations," twenty percent of operations

13   consisted of "Retail" and eighty percent of operations consisted of "Car Storage."  *Id*.  The

14   applicants marked the "No" box in response to the question, "Engage in any other operations?"

15   *Id*.  The applicants likewise marked the "No" box in response to the question, "Loan, Lease or

16   Rent autos to others?"  *Id*.

17       United issued Policy No. USA 4128625 for the period June 17, 2016 to June 17, 2017,

18   listing Bani Auto Group, Inc. and Sia Bani & Company, LLC as the named insureds.  *See* Policy,

19   COE 2.  Bani Investments LLC later was added as a named insured.  *See id*. at USIC 000089.  All

20   three of the named insureds were owned by the same individual, Siavosh Banihashemi ("Sia

21   Bani").  *See* Sia Bani Dep. 10:12-19, COE 14.  Sia Bani also owned Club Sportiva, Inc., a

22   company that organized Exotic Car Tours in which members of the public could drive exotic and

23   luxury cars over California roads.  *See id*.; *Wright* Compl. ¶ 10, COE 3; Club Sportiva, Inc.'s

24   Responses to United's RFAs Set One, RFA 1, COE 13.  As discussed below, United treated Sia

25   Bani and Club Sportiva, Inc. as additional insureds under the policy in connection with the *Wright*

26   action.  *See* Letter dated October 17, 2017, COE 4; Letter dated March 12, 2018, COE 5; Letter

27   dated November 14, 2018, COE 6.

28       Section I of the policy, titled "Covered Autos Coverages," includes Paragraph D, "Covered

Autos Liability Coverage." *See* Policy, COE 2, at USIC 000023.  Under that provision, United is required to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos.'" *Id*.  United has "the right and duty to defend any 'insured' against a 'suit' asking for such damages." *Id*.  However, United has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply." *Id*.

Section I, Paragraph D is limited by several exclusions and endorsements, three of which potentially bear on this case.  First, a "Special Exclusions and Limitations Endorsement" creates the following exclusion to Section I, Paragraph D:

> This insurance does not apply to:
>
> **g. Leased, Rented or Loaned Autos**
>
> Any covered "auto";
> (1) Leased to others; or
> (2) Rented to others; or
> (3) Loaned to others.

Policy at USIC 000062.

Second, the same "Special Exclusions and Limitations Endorsement" creates the following exclusion to Section I, Paragraph D:

> This insurance does not apply to:
> . . .
>
> **Tires**
>
> a. "Bodily injury" or "property damage" arising out of or resulting from:
> (1) The sale, installation or repair of used, recapped or retread tires; or
> (2) Tires which, at the time of sale, are older than recommended by manufacturer's guidelines; or
> (3) Tires that have been recalled; or
> (4) The inspection or lack of inspection of any tires; or
> (5) The failure of any "insured" or anyone else for whom any "insured" is or could be held liable to issue warnings relating to the condition of any tires; or
> (6) Any other cause of action or chain of events arising out of or as a result of a.(1 ), a.(2) or a.(3) above.

1    Policy at USIC 000061.

2          Third, a "Limitation of Coverage – Schedule of Operations" provides that "[t]he coverage

3    provided by Section I – Covered Autos Coverages, paragraph D., Covered Autos Liability

4    Coverages . . . applies only if the actual and/or alleged 'bodily injury', 'property damage' or

5    'personal and advertising injury' is caused by or results from the operations shown in the Schedule

6    above."  Policy at USIC 000076.  The "Schedule above" lists three operations:  "Auto Storage –

7    No Repair," "Consignment Sales," and "Dealers – Used Autos."  *Id.*

8          *Wright I Lawsuit*

9          On July 25, 2017, Patrice Wright filed a state court action ("*Wright I*") on behalf of herself

10   and her minor children, asserting claims arising out of the death of her husband, David Wright

11   ("Wright"), while he was driving in an Exotic Car Tour.  *See* San Mateo Superior Court Case No.

12   17CIV02816.  Christopher Wright, the decedent's adult son, also was named as a plaintiff.  *See id.*

13   The second amended complaint ("SAC"), erroneously labeled as the third amended complaint,

14   alleged that Wright rented a 2010 Ferrari California automobile from Bani Auto Group, Inc., Club

15   Sportiva, Inc., and Sia Bani for the purpose of driving it in an Exotic Car Tour on September 7,

16   2017.  *See Wright I* SAC ¶ 16, COE 3.  Tragically, Wright lost control of the vehicle and was

17   killed when it crashed.  *See Wright I* SAC ¶ 16.  The *Wright I* plaintiffs alleged that the cause of

18   the crash was "an over heat-cycled and dangerously hardened right rear tire" on the 2010 Ferrari

19   California automobile, and that Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani were

20   negligent in the maintenance of the 2010 Ferrari California automobile and in the selection of the

21   course for the Exotic Car Tour.  *See id.* ¶¶ 12-15.

22         The *Wright I* plaintiffs sued Bani Auto Group, Inc., Club Sportiva, Inc., Sia Bani, and the

23   State of California, Department of Transportation ("CalTrans") for:  (1) negligence, (2) products

24   liability, (3) breach of express warranty, (4) breach of implied warranty, (5) failure to warn, and

25   (6) dangerous condition of public property.  *See id.* ¶¶ 9-50.  Granite Rock Company was added as

26   a defendant on August 22, 2018.  *See* Amendment to Compl., AOE 7, ECF 70-4.

27         *Wright II Lawsuit*

28         On September 5, 2018, Patrice Wright filed a state court survival action ("*Wright II*") to

United States District Court
Northern District of California

United States District Court
Northern District of California

recover damages suffered by her husband before his death.  *See San Mateo Superior Court Case No. 18CIV04730.*  The complaint named Club Sportiva, Inc. and Sia Bani as defendants.  *See Wright II* Compl., AOE 9.  The complaint alleged that Club Sportiva, Inc. and Sia Bani rented the 2010 Ferrari California automobile to David Wright for use during the Exotic Car Tour; that Club Sportiva, Inc. and Sia Bani knew the right rear tire on the vehicle had insufficient tread, was hardened, and needed replacement; and that Club Sportiva, Inc. and Sia Bani were negligent in renting the vehicle in a dangerous condition and in their selection of the course for the Exotic Car Tour.  *See id.* ¶¶ 8-16.  The *Wright II* complaint asserted claims against Club Sportiva, Inc. and Sia Bani for:  (1) negligence, (2) products liability, (3) breach of express warranty, (4) breach of implied warranty, and (5) failure to warn.  *See id.* ¶¶ 8-44.

*Tender of the Defense of Wright I and Wright II to United*

Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani tendered the defense of *Wright I* and *Wright II* to United, which accepted the tender under a reservation of rights.  By letter dated October 17, 2017, United accepted the tender as to Bani Auto Group, Inc. and Sia Bani.  *See* Letter dated October 17, 2017, COE 4.  On March 12, 2018, United sent a letter confirming that it accepted the tender as to Bani Auto Group, Inc. and Sia Bani.  *See* Letter dated March 12, 2018, COE 5.  By letter dated November 14, 2018, United accepted the tender as to Club Sportiva, Inc. and Sia Bani.  *See* Letter dated November 14, 2018, COE 6.  In all three letters, United stated that acceptance of the tender of the defense of the *Wright* actions was subject to a reservation of rights, including United's rights to seek reimbursement from the insureds for defense costs and indemnity paid on uncovered claims.

*Settlement of Wright I and Wright II*

On August 13, 2018, Sia Bani was dismissed from *Wright I*.  *See Dismissal Order, AOE 8.*  On August 30, 2018, United sent counsel for the Bani Defendants a letter ("*Blue Ridge* letter")[1] advising that United intended to offer its $1 million policy limit to settle *Wright I* in exchange for a release of Bani Auto Group, Inc. and Club Sportiva, Inc.  *See Blue Ridge* letter, COE 7.  United

---

[1] *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (2001).

stated that the settlement would be made pursuant to a reservation of rights to seek reimbursement from the insureds for uncovered claims, and that United believed the claims asserted in *Wright I* to be uncovered. *See id.* United offered the insureds the option of taking over the defense of *Wright I* through trial, at their own expense, in *lieu* of a policy limit settlement. *See id.* The Bani Defendants did not respond to the *Blue Ridge* letter or otherwise indicate that they wished to take over the defense of *Wright I*. *See* Hall Decl. ¶ 10, ECF 67-1.

On August 31, 2018, United made an offer to settle *Wright I* for its $1 million policy limit, in return for a release and dismissal of Bani Auto Group, Inc. and Club Sportiva, Inc. *See* Letter dated August 31, 2018, AOE 4. On September 4, 2018, United withdrew its August 31, 2018 settlement offer and instead offered to settle *Wright I* for its $1 million policy limit, in return for a release and dismissal with prejudice of Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani. *See* Letter dated September 4, 2018, AOE 4. United acknowledged that Sia Bani had been dismissed from *Wright I*, but noted that the dismissal was without prejudice. *See id.*

Patrice Wright filed the *Wright II* action the following day, on September 5, 2018. *See Wright II* Compl., AOE 9. Sia Bani was a named defendant in *Wright II*. *See id.* United thereafter advised counsel in *Wright I* and *Wright II* that the offer to settle for the $1 million policy limit would require release of all claims asserted against Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani in both *Wright I* and *Wright II*. *See* Letter dated September 18, 2018, AOE 6. On September 18, 2018, United sent counsel for the Bani Defendants a follow-up to its prior *Blue Ridge* letter, advising that it now proposed to settle *Wright I* and *Wright II* on behalf of Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani for the policy limit of $1 million. *See id.* United reiterated that its policy limit settlement offer would be made under a reservation of rights. *See id.*

On February 1, 2019, *Wright I* and *Wright II* were consolidated for all purposes. *See* Minute Order, AOE 10. Sia Bani had not been dismissed from *Wright II* and thus he remained a party in the consolidated action ("the *Wright* action"). While not entirely clear from the record, it appears that the consolidated action proceeded under the caption and case number of *Wright I*.

On June 18, 2019, the parties in the consolidated *Wright* action attended a mediation. *See* Bani Decl. ¶ 13, ECF 70-2. Sia Bani attended on behalf of himself, Bani Auto Group, Inc., and

United States District Court
Northern District of California

United States District Court
Northern District of California

Club Sportiva, Inc.  *See id.*  The parties to the *Wright* action agreed to a dismissal of the three Bani Defendants with prejudice in exchange for United's payment of the $1 million policy limit.  *See* Hall Decl. ¶ 11, ECF 67-1.  United paid the policy limit on behalf of the Bani Defendants, jointly and severally, on August 30, 2019.  *See id.* ¶ 12.  Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani were dismissed from the *Wright* action with prejudice on September 25, 2019.  *See id.* ¶ 13.

*The Present Action*

United filed this action on March 16, 2018 against Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani, who were sued in the *Wright* action; Sia Bani & Company, LLC and Bani Investments LLC., named insureds who were not sued in the *Wright* action; and the *Wright* action plaintiffs, Patrice Wright and the decedent's children.  *See id.*  United asserts claims for: (1) policy rescission, (2) declaratory relief re no duty to defend, (3) declaratory relief re no duty to defend, (4) declaratory relief re no duty to indemnify, (5) declaratory relief re no duty to indemnity, (6) recoupment of defense expenses, and (7) recoupment of indemnity payments.

On October 23, 2018, the Court stayed the action pending resolution of the underlying *Wright* litigation.  *See* Order Granting Stay, ECF 60.  The Court lifted the say on October 17, 2019, after being informed of the settlement in the underlying *Wright* action and the dismissal of Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani from that action with prejudice.  *See* Order Approving Joint Status Report and Request to Lift Stay, ECF 66.  On the same date, the Court granted the parties' stipulated request to dismiss the Wright parties from this action.  *See* Order Approving Dismissal of Wright Defendants, ECF 65.

## II.   LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Where the non-moving party bears the burden of

1    proof at trial, the moving party need only prove that there is an absence of evidence to support the

2    non-moving party's case." *Id.* "Where the moving party meets that burden, the burden then shifts

3    to the non-moving party to designate specific facts demonstrating the existence of genuine issues

4    for trial." *Id.* "[T]he non-moving party must come forth with evidence from which a jury could

5    reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the

6    evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

7    nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "'Where the record taken as a whole

8    could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for

9    trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

10   (1986)).

## III.   DISCUSSION

12          As noted above, there are only five defendants remaining in this action:  Bani Auto Group,

13   Inc., Club Sportiva, Inc., Sia Bani, Sia Bani & Company, LLC, and Bani Investments LLC,

14   referred to collectively herein as "Defendants."  The three defendants who were sued in the *Wright*

15   action – Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani – are referred to herein as "the

16   Bani Defendants."

17          United has filed a motion for partial summary judgment on Claims 4, 5, and 7 as to all five

18   remaining Defendants.  Claim 4 seeks a declaration that certain policy provisions preclude

19   coverage of the claims asserted in the *Wright* action and therefore United owes no duty to

20   indemnify any insured sued in the *Wright* action.  *See* Compl. ¶¶ 36-37.  Claim 5 seeks a

21   declaration that Club Sportiva, Inc., formerly known as Drive A Dream, Inc., does not qualify as

22   an insured under the policy and therefore United owes no duty to indemnify Club Sportiva or

23   Drive A Dream, Inc.  *See* Compl. ¶¶ 39-40.  Claim 7 seeks reimbursement of the amounts it paid

24   to settle the underlying *Wright* action.  *See* Compl. ¶ 44.  United argues that it is entitled to

25   summary judgment on these claims based on three policy provisions:  the Leased, Rented or

26   Loaned Autos exclusion; the Tires exclusion; and the Limitation of Coverage endorsement.

27          In opposition, Defendants contend that United is not entitled to partial summary judgment

28   for four reasons.  First, Defendants argue that United has not established that the Leased, Rented

United States District Court
Northern District of California

or Loaned Autos exclusion or Tires exclusion applies.  Second, Defendants argue that United has not established that the Limitation of Coverage endorsement precludes coverage.  Third, Defendants assert that even if the claims raised in the *Wright* action are not covered by the policy, United has not established that the settlement amount was reasonable and therefore has not established entitlement to reimbursement.  Fourth, Defendants argue that United cannot seek reimbursement from Sia Bani, Sia Bani & Company, LLC, or Bani Investments LLC, because Sia Bani was dismissed from the *Wright* action and Sia Bani & Company, LLC, or Bani Investments LLC were not parties to the *Wright* action.

In reply, United withdraws its motion as to Sia Bani & Company, LLC and Bani Investments LLC.  United indicates that it may seek to dismiss Sia Bani & Company, LLC and Bani Investments LLC from this action, as they were not parties to the *Wright* action.  United contends that it properly may seek reimbursement from Sia Bani and that the remainder of Defendants' arguments are without merit.

Before turning to these points, the Court observes that all of United's coverage arguments go to the issue of whether certain policy provisions preclude coverage of the claims asserted in the *Wright* action.  Resolution of that issue in United's favor would entitle it to summary judgment on Claim 4, which seeks a declaration that there was no coverage of the *Wright* claims and therefore United owes no duty to indemnify any insured sued in the *Wright* action.  United presents no argument or evidence, however, that would entitle it to summary judgment on Claim 5, which seeks a declaration that Club Sportiva, Inc. does not qualify as an insured under the policy and therefore United owes no duty to indemnify Club Sportiva.  The issue of whether Club Sportiva qualifies as an insured simply is not addressed in United's motion.  Because United has failed to meet its initial burden on summary judgment with respect to Claim 5, its motion is DENIED as to Claim 5.

Accordingly, the only issues properly presented by United's motion are whether United is entitled to partial summary judgment against the Bani Defendants – Bani Auto Group, Inc., Club Sportiva, Inc., and Sia Bani – on Claims 4 and 7.  The Court addresses those claims in turn, as follows.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Claim 4 for Declaratory Relief that No Duty to Indemnify

As noted above, Claim 4 seeks a declaration that there was no coverage of the claims asserted in the *Wright* action and therefore United owes no duty to indemnify any insured sued in the *Wright* action.  *See* Compl. ¶¶ 36-37.  While an insurer has a broad duty to defend the insured against third party claims that are even potentially within the policy's coverage, "[t]he duty to indemnify is much narrower."  *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497 (2001).[2] "[T]he insurer only has a duty to indemnify the insured for covered claims, and no duty to pay for noncovered claims because the insured did not pay premiums for such coverage."  *Id*. at 502-03.

In its motion, United identifies the policy provision that potentially could give rise to coverage, absent other limiting provisions, as Section I , Paragraph D.  Section I of the policy, titled "Covered Autos Coverages," includes Paragraph D, "Covered Autos Liability Coverage."  *See* Policy, COE 2, at USIC 000023.  Under that provision, United is required to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, *caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos*.'"  *Id*. (emphasis added).  *Id*.  Given the nature of the claims in the *Wright* action, which arose from the death of David Wright while driving an automobile in the Exotic Car Tour organized by Club Sportiva, Inc., the Court finds that United has identified the relevant coverage provision.  The Bani Defendants do not dispute United's identification of Section I, Paragraph D as the relevant coverage provision, nor do they point the Court to any other policy provision that might give rise to coverage.

United argues that coverage under Section I , Paragraph D is precluded by three policy provisions:  the Leased, Rented or Loaned Autos exclusion; the Tires exclusion; and the Limitation of Coverage endorsement.  The Court finds the Leased, Rented or Loaned Autos exclusion to be dispositive.

A "Special Exclusions and Limitations Endorsement" creates the following exclusion to Section I, Paragraph D:

---

[2] Because California is the forum state in this diversity action, its substantive law governs.  *See Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014).

1

2

3

4

5

This insurance does not apply to:

**g. Leased, Rented or Loaned Autos**

Any covered "auto";
    (1) Leased to others; or
    (2) Rented to others; or
    (3) Loaned to others.

6   Policy at USIC 000062.  Thus, while the policy generally covers claims for bodily injury or

7   property damage "caused by an 'accident' and resulting from the ownership, maintenance or use

8   of covered 'autos,'" no such coverage exists where the covered auto was leased, rented, or loaned

9   to others.  United submits the Bani Defendants' admission that the Ferrari driven by David Wright

10  at the time of his death "was rented to David Wright to drive in the Exotic Car Tour organized or

11  sponsored by Club Sportiva, Inc."  Responses To United Specialty Insurance Company's Requests

12  For Admission, Set One, RFA 16, COE 12.  Based on this evidence, it appears that even if the

13  Ferrari driven by David Wright otherwise would be considered a covered auto under the policy,

14  the Leased, Rented or Loaned Autos exclusion precludes coverage because the Ferrari was rented

15  to David Wright.  The Court finds this evidence sufficient to meet United's initial burden on

16  summary judgment to demonstrate that the claims asserted in the *Wright* action were not covered

17  under the policy.  The burden thus shifts to the Bani Defendants to submit evidence sufficient to

18  create a material dispute as to application of the Leased, Rented or Loaned Autos exclusion.

19        The Bani Defendants argue that the language of the Leased, Rented or Loaned Autos

20  exclusion is insufficient to preclude coverage, relying on *Miesen v. Bolich*, 177 Cal. App. 2d 145

21  (1960).  In *Miesen*, the issue was whether a garage liability policy covered claims arising from an

22  injury suffered when Mr. Miesen fell from a rental truck because of the truck's defective side

23  racks and stakes.  *See id*. at 148-49.  The fall occurred while the truck was on the premises of the

24  insured service station and repair shop.  The policy covered injury caused by certain "hazards"

25  related to the operation of the insured service station and repair shop.  *See id.* at 149-50.  The

26  policy also contained an exclusion from coverage for "any automobile while rented to others by

27  the named insured. . . ."  *Id*. at 150.  The appellate court concluded as a matter of law that the

28  exclusion did not apply, reasoning that the policy clearly was intended to afford protection to the

United States District Court
Northern District of California

11

insured where an injury arose out of or in connection with the business of operating the service station and repair shop; Mr. Miesen's injury fell within the scope of that protection; and the accident was caused by the "faulty maintenance of the truck, not the fact that the truck was rented to a third person and away from the premises of the insured at the time of the accident." *Id.* at 155.

Miesen is factually distinguishable from the present case. Whereas *Miesen* turned on the court's conclusion that the accident fell within the policy protection intended by the parties – "protection to the insured where the injury arose out of or in connection with the business of operating a service station and repair shop" – nothing in the present record indicates that the parties here intended the policy protection to cover rental of luxury cars to members of the public who wished to drive in an Exotic Car Tour. To the contrary, under the Limitation of Coverage – Schedule of Operations provision, the protection intended by the parties was limited to injuries resulting from the operations shown in the Schedule above." Policy at USIC 000076. The "Schedule above" lists three operations: "Auto Storage – No Repair," "Consignment Sales," and "Dealers – Used Autos." The Court cannot conceive of a plausible interpretation of this policy language under which the rental of a Ferrari to a member of the public would fall within the intended coverage, and the Bani Defendants offer none.

The Court finds *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal. App. 4th 1194 (1996), cited by United, to be more persuasive, although the facts of that case are not a perfect fit here either. In *Providence*, nine Nigerian musicians were injured when the tire of their rental van exploded, causing the van to overturn on the freeway. *See id.* at 1198. In the ensuing litigation between potentially responsible insurers, the question arose whether the injuries were covered by a garage operations policy issued to the van owner. *See id.* at 1205-06. The policy contained a rental exclusion that excluded from coverage "injuries 'arising out of . . . an auto' owned by the insured while rented to another." *Id.* at 1207. The court held that, under *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94 (1973), "No coverage exists under insurance policies excluding injuries arising out of an auto's use unless the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car." *Providence*,

United States District Court
Northern District of California

1  42 Cal. App. 4th at 1207 (quotation marks and citation omitted).  In the case before it, the

2  *Providence* court held that "[t]he only way the plaintiffs in the underlying actions could have been

3  exposed to the claimed negligent repair was through the operation or use of the auto."  *Providence*,

4  42 Cal. App. 4th at 1207.  The *Providence* court distinguished *Miesen*, noting that *Miesen*

5  predated *Partridge* and did not involve interpretation of "arising out of" language.  *Id*. at 1208.

6  The *Providence* court concluded that, under *Partridge*, "the bodily injuries in the underlying

7  actions arose out of an auto owned by an insured while rented to another and are therefore

8  excluded from coverage under [the] garage operations policy."  *Id*.

9        The Bani Defendants correctly point out that the United policy does not contain the

10  "arising out of" language upon which *Providence* turned.  However, United highlights the

11  language in the coverage provision, Section I , Paragraph D, providing coverage for injuries

12  "resulting from" the ownership, maintenance or use of covered autos.  Policy, COE 2, at USIC

13  000023.  United argues that this "resulting from" language is modified by the Leased, Rented or

14  Loaned Autos exclusion, and that under a straightforward reading of the two provisions, injuries

15  "resulting from" the ownership, maintenance or use of an automobile "Leased to others," or

16  "Rented to others," or "Loaned to others" are excluded from coverage.  The Court agrees.  The

17  Bani Defendants have not proffered any plausible construction of the Leased, Rented or Loaned

18  Autos exclusion that would omit the rental Ferrari-related injuries from its scope.

19        Because the Leased, Rented or Loaned Autos exclusion precludes coverage for the claims

20  asserted in the *Wright* action, United has no duty to indemnify the Bani Defendants.  Accordingly,

21  United's motion for partial summary judgment is GRANTED as to Claim 4.  Having reached this

22  conclusion, the Court need not and does not address the parties' arguments with respect to the

23  Tires exclusion and the Limitation of Coverage endorsement.

24        **B.      Claim 7**

25        Claim 7 seeks reimbursement of the amounts United paid to settle the underlying *Wright*

26  action on behalf of the Bani Defendants.  An insurer may settle a lawsuit on behalf of its insureds

27  subject to a reservation of rights, and later seek reimbursement for settlement amounts paid on

28  noncovered claims.  *See Blue Ridge*, 25 Cal. 4th at 498.  In *Blue Ridge*, the California Supreme

1    Court set out the procedure an insurer must follow: "the prerequisites for seeking reimbursement

2    for noncovered claims included in a reasonable settlement payment [are]: (1) a timely and express

3    reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a

4    proposed settlement offer; and (3) an express offer to the insureds that they may assume their own

5    defense when the insurer and insureds disagree whether to accept the proposed settlement."

6        United submits evidence showing that it followed the *Blue Ridge* procedure in this case.

7    On August 30, 2018, United sent counsel for the Bani Defendants a *Blue Ridge* letter advising that

8    United intended to offer its $1 million policy limit to settle *Wright I* in exchange for a release of

9    Bani Auto Group, Inc. and Club Sportiva, Inc.  *See Blue Ridge* letter, COE 7.  The letter contained

10   an express reservation of rights.  *See id.*  The letter also advised that Bani Auto Group, Inc. and

11   Club Sportiva, Inc. could assume their own defense if they disagreed with the proposed settlement.

12   *See id.*

13       The *Blue Ridge* letter sent on August 30, 2018 did not address Sia Bani, because at that

14   time, Sia Bani had been dismissed from *Wright I* and *Wright II* had not yet been filed.  However,

15   after *Wright II* was filed, United sent counsel for the Bani Defendants a follow-up to its prior *Blue

16   Ridge* letter, advising that it now proposed to settle *Wright I* and *Wright II* on behalf of Bani Auto

17   Group, Inc., Club Sportiva, Inc., and Sia Bani for the policy limit of $1 million.  *See* Letter dated

18   September 18, 2018, AOE 6.  United reiterated that its policy limit settlement offer would be made

19   under a reservation of rights.  *See id.*

20       The Bani Defendants did not indicate that they wished to take over their defense or

21   otherwise object to the proposed policy limit settlement.  In fact, Sia Bani attended a subsequent

22   mediation at which it was agreed among all parties to the *Wright* action that the Bani Defendants

23   would be dismissed with prejudice in exchange for United's payment of the $1 million policy

24   limit.  *See* Bani Decl. ¶ 13, ECF 70-2; Hall Decl. ¶ 11, ECF 67-1.  United paid the policy limit on

25   behalf of the Bani Defendants, jointly and severally, on August 30, 2019.  *See* Hall Decl. ¶ 12.

26   The Court finds that United has met its initial burden of showing that it satisfied the *Blue Ridge*

27   prerequisites to seeking reimbursement of settlement monies paid for noncovered claims.  The

28   burden shifts to the Bani Defendants to demonstrate the existence of a material dispute as to

United States District Court
Northern District of California

14

1    United's entitlement to reimbursement.

2         The Bani Defendants argue that reimbursement cannot be sought as to Sia Bani because he

3    was dismissed from *Wright I* prior to the settlement.  That argument is without merit, as the record

4    reflects that Sia Bani was named as a defendant in *Wright II*, which was consolidated with *Wright*

5    *I* prior to settlement of the consolidated action.  Moreover, the *Blue Ridge* letters expressly

6    informed the Bani Defendants that the policy limit would be offered in exchange for release of

7    Bani Auto Group, Inc., Club Sportiva, Inc., *and* Sia Bani.  And the record reflects that Sia Bani in

8    fact was released.  At the hearing, counsel for United represented that Sia Bani signed the

9    settlement agreement in the *Wright* action individually and on behalf of Bani Auto Group, Inc. and

10   Club Sportiva, Inc.  That settlement agreement is not before the Court, but United certainly could

11   submit it to the Court if required to do so.  Counsel for the Bani Defendants did not dispute that

12   Sia Bani signed the settlement agreement individually.  Under these circumstances, the Court finds

13   any argument that Sia Bani was not adequately notified of the proposed settlement for policy

14   limits to be entirely unpersuasive.

15        The Bani Defendants also argue that United cannot obtain reimbursement for settling

16   noncovered claims absent proof that the underlying settlement was "reasonable" under the

17   standards articulated in *Johansen v. California State Auto. Assn. Inter-Ins. Bureau*, 15 Cal. 3d 9

18   (1975).  In *Johansen*, the California Supreme Court held that "an insurer who fails to accept a

19   reasonable settlement offer within policy limits because it believes the policy does not provide

20   coverage assumes the risk that it will be held liable for all damages resulting from such refusal,

21   including damages in excess of applicable policy limits."  *Id*. at 12.  The California Supreme Court

22   emphasized that, "We have held that whenever it is likely that the judgment against the insured

23   will exceed policy limits so that the most reasonable manner of disposing of the claim is a

24   settlement which can be made within those limits, a consideration in good faith of the insured's

25   interest requires the insurer to settle the claim."  *Id*. at 16 (quotation marks and citation omitted).

26   The *Johansen* court went on to hold that "the only permissible consideration in evaluating the

27   reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the

28   probable liability of the insured, the ultimate judgment is likely to exceed the amount of the

settlement offer." *Id*. "Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one." *Id*. According to the Bani Defendants, United cannot show that their liability in the underlying action was likely to exceed $1 million, and thus cannot show that the settlement was "reasonable."

The Bani Defendants have not cited, and the Court has not discovered, a single case holding that an insurer must justify the reasonableness of its *Johansen* calculus in the underlying action in order to seek reimbursement for settling noncovered claims. In *Blue Ridge*, the California Supreme Court noted that "[i]n *Johansen*, the insurer did not seek reimbursement of a settlement. Hence, *we were not in that case directly addressing the steps an insurer must take in order to obtain reimbursement of a settlement for a noncovered claim*." *Blue Ridge*, 25 Cal. 4th at 499 (emphasis added). The California Supreme Court addressed those steps in *Blue Ridge*, finding that if an insurer satisfies the three prerequisites articulated in that decision, "it should be deemed to have an implied-in-law right of reimbursement to avoid the insureds' unjust enrichment." *Id*. at 503. By settling the underlying action and then seeking reimbursement for claims that turn out to be noncovered, the insurer can comply with its obligations to the insured under *Johansen*, but avoid granting the insured a "windfall" to which the insured could have no reasonable expectation. *Id*.

The Bani Defendants' suggestion that United must go beyond establishing the prerequisites to reimbursement identified by the California Supreme Court in *Blue Ridge*, and prove that it accurately assessed the insured's risk of liability in the underlying *Wright* action, would turn *Blue Ridge* on its head. United satisfied the three requirements set forth in *Blue Ridge*, and the Bani Defendants had ample opportunity to object to the policy limit settlement before it was finalized. They did not do so. In fact, the Bani Defendants affirmatively agreed to the policy limit settlement. The Court therefore finds that the Bani Defendants have not demonstrated the existence of material factual disputes that would preclude summary judgment on Claim 7.

Finally, the Bani Defendants assert that United cannot seek reimbursement from them because United has not attempted to allocate the settlement payment and instead seeks to hold the

Bani Defendants jointly and severally liable.  The Bani Defendants rely on *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259 (2007) for this proposition.  In *LA Sound*, an insured corporation and two of its officers were provided a defense and indemnity by the insurer.  The insurer later sought rescission of the policy based on misrepresentations in the application, and reimbursement of defense and indemnity costs.  *See id.* at 1263. The trial court determined that the insurer was entitled to rescind the policy and recover its defense and settlement costs, and it awarded judgment for those costs jointly and severally against the three insureds.  *See id.* The appellate court affirmed the determination that the insurer was entitled to reimbursement of defense and settlement costs, but it found that the trial court erred in awarding judgment jointly and severally against all of the insureds.  *See id.*  The appellate court held that, "In the rescission context, insurers seeking reimbursement must bear the . . . burden of showing which costs can be allocated to the defense or indemnity of each particular insured."  *Id*. at 1272-73.  "It would be inequitable to require a party insured under a rescinded policy to reimburse the insurer the policy benefits it received and also all policy benefits that every other insured party received."  *Id*. at 1273.  The *LA Sound* court emphasized that the right to reimbursement runs against the person who benefits from the settlement, but "only to the extent the person *actually benefits*."  *Id*.

In response, United argues that allocation of the settlement payment is not required in this case, directing the Court to *Axis Surplus Ins. Co. v. Reinoso*, 208 Cal. App. 4th 181 (2012) in support of its position.  In *Axis Surplus*, an insurer brought suit against its insureds to recover defense and settlement costs expended in an underlying tenant lawsuit.  After a bench trial, the trial court awarded the insurer approximately $2.1 million in settlement costs that had been paid on noncovered claims.  *See id.* at 188.  The trial court did not specify that the award was joint and several, but the parties assumed that it was and the appellate court made the same assumption.  *See id.*  On appeal, one of the insureds argued that the trial court erred by failing to allocate the settlement amount among its three insureds.  *See id.* at 191.  The appellate court cited *LA Sound* for the proposition that "[t]he insurer seeking recovery against the insured for expenditures in settling a case when the claims were not covered should allocate those expenditures among the

United States District Court
Northern District of California

insureds." *Id*. at 195.  However, the *Axis Surplus* court inferred that the trial court had made an implied finding of allocation, which was joint and several obligation to reimburse the insurer for the full amount of the settlement payment, and that there was substantial evidence to support that implied finding.  *See id.*  The three insureds were a husband and wife who co-owned and co-managed the rental property giving rise to the underlying tenant lawsuit, and their management company.  *See id.* The appellate court noted that participants in a joint venture are jointly and severally liable for noneconomic damages, whatever their respective interests in the joint venture. *See id.* at 196.  The court also found that Linda "received the full benefit of the settlement," which protected her from exposure of up to a $30 million in liability.  *Id*.  Under these circumstances, the appellate court held that "the trial court did not err in its allocation" of joint and several liability. *Id*.

United argues that the record evidence in this case likewise supports an allocation of joint and several liability with respect to the Bani Defendants.  United points to Sia Bani's deposition, in which he stated that he owns both Bani Auto Group, Inc. and Club Sportiva, Inc.  *See* Bani Dep. 10:12-19, COE 14.  Sia Bani also testified that both Bani Auto Group, Inc. and Club Sportiva, Inc. had responsibility for the maintenance of the Ferrari vehicle that David Wright drove in the Exotic Car Tour.  *See id.* 77:25-78:4.  Sia Bani was asked, "So Bani Auto Group and Club Sportiva are kind of entwined in the maintenance and the use of the Ferrari California by Mr. Wright on the day of the crash?"  *Id*.  Sia Bani answered, "Yes."  *Id*.  Sia Bani also testified that Bani Auto Group, Inc. and Club Sportiva, Inc. performed their own maintenance and safety checks on cars used in the Exotic Car Tour, and that with respect to the Ferrari California driven by Mr. Wright, "we replaced I believe two tires."  Bani Dep. 27:6-13, AOE 1.

Based on this evidence, the Court finds that United has met its burden to show how the settlement amount should be allocated.  *See LA Sound*, 156 Cal. App. 4th at 1272-73 ("[I]nsurers seeking reimbursement must bear the analogous burden of showing  which costs can be allocated to the defense or indemnity of each particular insured.").  Here, as in *Axis Surplus*, the insureds are closely related.  The benefit of the settlement agreement ran equally to all three Bani Defendants, as that benefit was "the benefit of eliminating potential liability and not the time or costs expended

18

on any particular person or entity being defended." *Axis Surplus*, 208 Cal. App. 4th at 195.  Thus, joint and several liability is appropriate in this case.

United's motion for partial summary judgment is GRANTED as to Claim 4.

**V.  ORDER**

United's motion for partial summary judgment is GRANTED as to Claims 4 and 7, and DENIED as to Claim 5.

This order terminates ECF 67.


Dated:  September 14, 2021

_____
BETH LABSON FREEMAN
United States District Judge